Timothy Miguel Willardson
3165 S. 300 W.
Salt Lake City, UT 84115
Telephone: (801) 746-5399
e-mail: tmwlaw@gmail.com
Attorney for Plaintiff Diversified Maintenance Systems, Inc.

# United States Court of Federal Claims

| | |
|---|---|
| DIVERSIFIED MAINTENANCE SYSTEMS, INC.<br>Plaintiff,<br>vs.<br><br>THE UNITED STATES<br>Defendant. | No. 06-706C<br><br>JUDGE: LETTOW |

# OPPOSITION TO DEFENDANT'S MOTION TO REMAND

Defendant has moved this honorable court to "remand" the protest to the SBA for determination of intervenor Cadence Contract Services LLC's status as a HUBZone contractor. That motion is deficient in a number of particulars and should be denied.

The motion is deficient because it fails to address the issue specifically required by the court in the scheduling conference held telephonically on Thursday, October 19, 2006. During that conference, the defendant's attorney indicated that defendant intended to make such a motion and was instructed that any such motion should address the issue that SBA procedures for such a determination do not allow Diversified Maintenance Systems, Inc. ("DMS") to participate in that determination. Having failed to obey the order of the court, the motion should be summarily

denied. In addition, even if defendant had complied with the court's order, such a procedure would seriously prejudice DMS's due process rights and would need to be denied for substantive reasons.

The motion is deficient because it ignores the posture of the case. A protest of the award of contract under solicitation number W91151-05-R-0003 has been made. A protest of intervenor's Hubzone status was made and, as admitted by defendant, should have been referred at the time of that agency protest to the SBA. Defendant elected not to do that. This action was then brought alleging that an improper action, including, but not limited to, award to a non-HUBZone contractor. In addition to the non-responsiveness of Cadence's bid, this action includes issues as to the arbitrary and capricious nature of other contracting agency action, including failure to follow solicitation requirements for evaluation, failure to evaluate all bids on the same basis, failure to rationally evaluate bids and articulate a rational basis for rejection of DMS's bid. Because there are other substantive issues in the case, a "remand" to the SBA would merely delay the resolution of the case, without providing a sufficient basis for resolution of the case. Assuming, *arguendo,* the issue of HUBZone status were in some way referred to the SBA, and assuming further that the SBA determined that Cadence was a HUBZone contractor, that would not dispose of the case.

The defendant's motion should therefore be denied.

***Introduction***

In early 2006, the Army Contracting Agency Southern Region (ACASR); Fort Hood Contracting Command; Contract Administration Division; Building 1001, 761st Tank Battalion

Fort Hood, TX 76544-5059 issued solicitation number W91151-05-R-0003 for a Job Order Contract.

On or about March 28, 2006, Diversified Maintenance, Inc. submitted a timely, responsive bid for the referenced solicitation. Diversified Maintenance Systems, Inc. On September 25, 2006, the agency provided Diversified Maintenance Systems, Inc. ("DMS") with a "Notice of Unsuccessful Offer." On Monday, September 25, 2006, DMS filed a protest[1] with the agency alleging, *inter alia,* that the Army's proposal to award the contract resulting from the referenced solicitation to Cadence Contract Services, LLC. would violate the FAR and the solicitation provision in two ways: (1) it would violate FAR § 52.219-3 Notice of Total HUBZone Set-Aside; and (2) it would violate the evaluation procedures set forth in clause 52.000-4044 Basis of Award and Evaluation Criteria (JOC) and the communications from the contracting agency related thereto. On Friday, October 4, 2006, the contracting agency sent out a decision, denying the protest.

The subject solicitation incorporates FAR § 52.219-3 Notice of Total HUBZone Set-Aside, in full text and provides that "Offers received from concerns that are not HUBZone small business concerns **shall not be considered**." (Emphasis added.) DMS asserts that Cadence Contract Services, LLC was not a HUBZone small business as of the bid date on the basis both of the location of its principal office and failure to have at least 35% of its employees residing in a HUBZone. DMS also contends that the contracting agency did not evaluate experience of the bidders equally and did not follow its own pre-bid guidance as to what would constitute

---

[1] Defendant's motion acknowledges (p. 2) that the protest was filed on the same date the agency gave notice that DMS's bid was rejected (September 25, 2006).

"experience" for purpose of evaluation. Specifically, DMS alleges that in considering Cadence for award, the agency took into account all of Cadence's prior experience, including the experience of the joint ventures in which Cadence participated, but refused to similarly consider joint venture experience of DMS.

On October 2, 2006, the agency sent out a debriefing letter addressed to DMS. DMS received that letter on the afternoon of October 4, 2006. That letter establishes that DMS earned a "Satisfactory" rating and states that Cadence received an "Exceptional" rating on its offer. DMS asserts that all of the stated bases of criticism of DMS' offer are false or unsupportable.

DMS's price was materially lower than that of Cadence.

***ARGUMENT***

**A. Standard of Review**

Bid protests involve review on the record under the Administrative Procedure Act's arbitrary, capricious, abuse of discretion, or "otherwise not in accordance with law" standard of review. 5 U.S.C. § 706(2)(A).

Generally, the court's review of the administrative record is confined to the record "already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). However, in some circumstances, the court may permit the parties to supplement the administrative record to "preserve a meaningful judicial review." *Rust Constructors, Inc. v. United States*, 49 Fed. Cl. 490, 496 (2001).

*Esch v. Yeutter*, 876 F.2d 976, (D.C. Cir. 1989), lists eight (8) circumstances, any one of which may justify supplementing the administrative record:

> **(1) when agency action is not adequately explained in the record before the court;**
>
> **(2) when the agency failed to consider factors which are relevant to its final decision;**
>
> **(3) when an agency considered evidence which it failed to include in the record;**
>
> (4) when a case is so complex that a court needs more evidence to enable it to understand the issues clearly;
>
> **(5) in cases where evidence arising after the agency action shows whether the decision was correct or not;**
>
> **(6) in cases where agencies are sued for failure to take action;**
>
> (7) in cases arising under the National Environmental Policy Act; and
>
> **(8) in cases where relief is at issue, especially at the preliminary injunction stage.**

*Id*. at 991 (quoting Stark & Wald, *Setting No Records: The Failed Attempts to Limit the Record in Review of Administrative Action*, 36 ADMIN. L. REV. 333, 345 (1984)).

Several of those *Esch* circumstances (1, 2, 3, 5, 6, and 8) are applicable or potentially applicable to the instant case.

While it is true that this court has inherent power to administer cases to effect the speedy and just determination of cases and controversies, including appointing special masters, remands to inferior tribunals, etc., that power should always be used with the stated goal (“speedy and just determination”) in mind.

**B. The Court Should NOT Remand This Matter To The SBA**

As is discussed above, defendant has chosen not to address the issue that the court specifically required defendant to address. That is a sufficient reason to deny defendant's motion.

Defendant has cited the Mark Dunning cases[2], *Florida Power & Light v. Lorion*, 470 U.S. 729, 743-44 (1985)., and *I.N.S. v. Orlando Ventura*, 537 U.S. 12 (2002) as its authorities for its position that the SBA should make the HUBZone determination. The Dunning cases do not consider the rights of the protester to due process as will be discussed below. The Florida Power case involves a specific circumstance, not present in or analogous to the instant matter. The Ventura case discusses legal issues related to the present matter, but the procedural posture of that case is fundamentally different from the instant case. All of defendant's authority is, therefore, either inapposite or distinguishable.

**1) Posture and Substance of the Instant Case**

In the present case the court is being asked to decide the propriety of a contract award where the following facts exist:

- The awardee's HUBZone status was determined in 2002 (Administrative Record ["AR"] p. 648).
- The relevant date for HUBZone status was March 31, 2006 (AR 642-643).
- HUBZone status is a condition precedent to consideration. (FAR § 52.219-3 Notice of Total HUBZone Set-Aside, AR 1038)
- Although defendant admits that a review of HUBZone status was required and should have been ordered by the contracting agency, no such review was requested or commenced. (Defendant's Motion to Remand p. 10, last paragraph.)

---

2 *Mark Dunning Indus., Inc. v. United States*, 58 Fed. Cl. 216 (2003), further proceedings, 60 Fed. Cl. 687 (2004) and 64 Fed. Cl. 374 (2005).

- Improper contact administration, including, unequal bid evaluation, violation of applicable FAR requirements, and merely pretextual bases for rejection of DMS's proposal and acceptance of intervenor's proposal are all at issue (Complaint.)

**2) I. N. S. v. Ventura**

*I.N.S. v. Orlando Ventura*, 537 U.S. 12 (2002) is an administrative procedure act appeal of a case which was commenced administratively before the Board of Immigration Appeals (BIA), was then appealed to the 9th Circuit, and then further appealed to the United States Supreme Court. The 9th Circuit held that the BIA had failed to make a determination of one element of a multi-element test that was the sole issue in the case. The 9th Circuit, instead of remanding the matter for a determination of that one element, made the determination itself and reversed the result of the BIA, stating that remand was unnecessary because there were no set of circumstances where another decision would be sustainable, in light of the facts in the case. The United States Supreme Court reversed the 9th circuit, stating that the matters that the 9th Circuit had relied on to determine that no other result was permissible were, in fact, complex, ambiguous, and uniquely within the expertise of the BIA to evaluate, and manifestly outside the 9th Circuit's ambit as an appeal court.

There are several key differences between *Ventura* and the instant matter. Most obviously, the 9th Circuit is an appeals court that cannot take testimony or receive evidence. The United States Court of Federal Claims is a trial court and has the power to do both. In *Ventura*, the agency had actually made a decision and had actually done most of the work of analyzing the evidence and the law, having failed to decide and explain its decision of a single element of a multi-element test. Here the agency that might have been involved has never even been contacted. ANY decision of the HUBZone issue as of 2006 will be *de novo*. All of the interested parties had been

heard, and on remand would be heard in *Ventura*. In this matter, a referral to the SBA would, by defendant's own admission, result in DMS being completely excluded from the determination. *Ventura* involved a complex matter where specialized expertise was required in order to make a determination of the legal issues. The instant matter involves only determining whether whatever facts exist satisfy the clear and unambiguous regulations that the defendant has cited on pages 7 and 8 of its memorandum. In addition, this court is the primary court for procurement issues, and interpreting procurement regulations, such as those at 13 C.F.R. cited by defendant, are uniquely within this court's expertise. Therefore, no significant advantage exists in the agency that might have been involved. *Ventura*, is, therefore, distinguishable.

**3) Florida Power & Light v. Lorion**

The scope of *Florida Power & Light v. Lorion*, 470 U.S. 729, 743-44 (1985) is described within the case itself (footnote 8) as follows:

> **In these cases we address only the question whether initial *subject-matter jurisdiction* is properly located in the court of appeals or the district court. That is the only question on which we granted certiorari, and it is the only question that the parties have briefed and argued before this Court.** We express no views on the merits of respondent Lorion's challenge to the Commission's denial of her citizen petition made under the authority of 10 CFR § 2.206 (1984) (Emphasis by bolding added.)

The point for which the case is cited by defendant is mere dicta.

**4) The Dunning Cases and Due Process**

This court is already well familiar with the Dunning cases: *Mark Dunning Indus., Inc. v. United States*, 58 Fed. Cl. 216 (2003), further proceedings, 60 Fed. Cl. 687 (2004) and 64 Fed. Cl. 374 (2005).

While there are some obvious similarities between the fact situation in Dunning and that of the instant case, DMS submits that they are not identical. One major difference is that in *Dunning*, the SBA actually did conduct multiple investigations and evaluations. In the present matter, no such investigation has been made. "Remand" means to return a case to a lower tribunal. In *Dunning* a "remand" was possible because the SBA had already had the matter presented to it at least twice. In this case it is definitionally impossible to "remand" to the SBA because they have never had it for consideration.

Another major dissimilarity between *Dunning* and the instant matter is that, in *Dunning*, apparently the propriety of involving the SBA was not contested by any party. The court merely announced that it was going to send the matter back to the SBA for some additional determinations and all parties then went forward on the assumption that such was the correct procedure. That is not the case here.

In *Advanced Systems Technology, Inc. v. United States*, United States Court of Federal Claims #05-1167C, decided 1/23/06, the court (Judge Williams) was dealing with an NAICS determination by the SBA's Office of Hearings and Appeals (OHA). Advanced Systems Technology, Inc. ("AST") and another bidder (RhinoCorps, Ltd.) disputed the propriety of the NAICS code chosen for two procurements. Those determinations were made without the substantial participation of AST. The determination of the NAICS code established a condition precedent to consideration for the award. Judge Williams considered whether the contracting agency could be enjoined from awarding the contracts subject to the disputed NAICS codes. The contracting agency was so enjoined. In reaching that decision, Judge Williams examined this

court's jurisdiction to hear such a constitutional issue, concluded it did, and explored with both breadth and depth the issues of the propriety of excluding an interested party from a matter which effects a procurement of interest to such a party. Resting her decision on the Administrative Procedure Act, the court stated:

> Section 555(b) of the APA provides in pertinent part:
>
> > So far as the orderly conduct of public business permits, an interested person may appear before an agency or its responsible employees for the presentation, adjustment, or determination of an issue, request, or controversy in a proceeding, whether interlocutory, summary, or otherwise, or in connection with an agency function.
>
> 5 U.S.C. § 555(b). Section 555 establishes the minimal procedural requirements for informal adjudication. *Pension Benefit Guar. Corp. v. The LTV Corp., Inc.*, 496 U.S. 633, 655 (1990); see generally Ronald J. Krotoszynski, "Taming the Tail That Wags The Dog: Ex Post and Ex Ante Constraints on Informal Adjudication," 56 ADMIN. L. REV. 1057, 1059 (2004) ("The Supreme Court has held that § 555 of the APA provides the APA's procedural blueprint for informal adjudications") (citing Pension Benefit). Here, because OHA's appeal procedure is not rulemaking or an on-the-record adjudication, it falls within the rubric of informal agency adjudication. Id.; 5 U.S.C. § 551(7); *cf.* 5 U.S.C. § 554. Further, section 555(b) is "universally understood to establish the right of an interested person to participate in an on-going agency proceeding." *Block v. SEC*, 50 F.3d 1078,1085 (D.C. Cir. 1995); *see also Amer. Commc'ns Ass'n v. United States*, 298 F.2d 648, 650 (2d Cir. 1962) (stating that an agency's discretionary power over intervention is limited by Section 555(b) which gives any interested person the right to intervene in a proceeding 'so far as the orderly conduct of public business permits').

In the present matter, without regard to whether or not constitutional due process is involved, it is clear that DMS is an interested party. DMS is the only bidder, other than intervenor, that was not disqualified from award, and is, therefore, in line for award if intervenor is not a HUBZone small business. Under the rationale and authority cited by *Advanced Systems Technology, Inc.*, any

proceeding that bars DMS from participation violates the Administrative procedure act, and therefore DMS's legal rights.

Defendant's reliance on the *Dunning* cases is simply a matter of having found a case that has a number of facially similar factual elements, that also has a result that the defendant would like to obtain here, and then asserting that because, "the facts of this case are exactly the same as those in [Dunning]," the same result ought to obtain here. Defendant here is seeking to remove the consideration of one of the main elements of this case from this court, where DMS can be fully heard, to the SBA where, according to defendant's own statement, DMS will be completely excluded. Since *Advanced Systems Technology, Inc*. establishes that such an *ex parte* proceeding would violate the law, such a result would be incorrect.

The intervenor in this matter has filed a brief that similarly champions *Dunning*. It is clear that intervenor shares defendant's opinion that the wrongful actions of the contracting agency are more likely to be sustained if DMS is prevented from being heard. It is somewhat ironic that, having entered this matter only by intervention, intervenor now seeks to deny the same justice to DMS's efforts to protect its interests. However, the entire concept of bid protests, and the Administrative Procedure Act, is that the playing field will be level for all parties. Following the *Dunning* procedure does not accomplish that essentially just objective.

**5) Practical Effect of "Remand" Requested**

As is discussed above, "remanding" the HUBZone question to the SBA, which has never had this matter before it, will not save any fact-finding or decision-making effort. If the SBA is to properly consider and decide whether or not Cadence was, in fact, a HUBZone small business in

March of 2006, they are going to have to receive evidence of Cadence's operations, and employees, for Utah and New York. This honorable court can do that just as well and just as expeditiously. If the SBA is going to properly do its job, it is then going to have to consider all of that evidence in light of the regulations at 13 C.F.R. § 126, *et seq*. This honorable court can do that just as well and just as expeditiously.

However, if the SBA makes a decision that one party or the other does not like, an appeal can then be taken from that decision. It is certain that one party or the other will not like whatever decision is rendered. Even if this matter goes forward during that appeal, the possibility of a reversal of that underlying SBA determination will be a cloud on the validity of any such proceeding. On the other hand, if this court decides the entire matter, all issues will be resolved at one time, and any disappointed parties will have only one bite at the appellate apple.

The practical effect of defendant's motion is that it wastes time, resources, and complicates the resolution of the issues here, while at the same time reducing the fairness of the proceedings by eliminating DMS from a crucial portion thereof.

**CONCLUSION**

The defendant's motion should be denied. As is discussed above, there is no benefit to be gained by granting the motion, and numerous ills, in the form of delay, violation of law, deprivation of rights to be heard, and complication of proceedings, among others, will result.

Dated: Friday, November 3, 2006

Oral Argument is Requested.

/s/ Timothy Miguel Willardson
TIMOTHY MIGUEL WILLARDSON
3165 S. 300 W.
Salt Lake City, UT 84115
Telephone: (801) 746-5399
e-mail: tmwlaw@gmail.com
Attorney for Plaintiff Diversified Maintenance Systems, Inc.

CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2006 a copy of the foregoing "OPPOSITION TO DEFENDANT'S MOTION TO REMAND" was filed electronically. I understand that the notice of filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Timothy Miguel Willardson

DATED: November 3, 2006.