# In the United States Court of Federal Claims

No. 06-706C

(Filed Under Seal: November 29, 2006)
(Reissued: December 4, 2006)

| | |
|---|---|
| **DIVERSIFIED MAINTENANCE SYSTEMS, INC.** Plaintiff, v. **UNITED STATES,** Defendant, and **CADENCE CONTRACT SERVICES, LLC,** Intervening Defendant. | Post-award bid protest; failure of contracting officer to refer an administrative challenge regarding the HUBZone status of the awardee to the Small Business Administration; juridical power in an area statutorily committed to decision by an agency; application of *Chenery I*; remand; RCFC 52.2 |

Timothy Miguel Willardson, Salt Lake City, Utah, for plaintiff.

Elizabeth Thomas, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, for defendant. With her on the briefs were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Bryant G. Snee, Assistant Director. Of counsel was Major Patrick Gary, Litigation Division, United States Department of the Army.

Patrick S. Hendrickson, South Jordan, Utah, for defendant-intervenor Cadence Contract Services, LLC.

## OPINION AND ORDER[1]

LETTOW, Judge.

This post-award bid protest involves a construction and maintenance contract entered by the United States Department of the Army ("the Army" or "the government") with Cadence Contract Services, LLC ("Cadence"). The protestor, Diversified Maintenance Systems, Inc. ("Diversified"), an unsuccessful bidder for the contract, asks that the award to Cadence be set aside and that the contract instead be awarded to Diversified.

Diversified alleges, *inter alia*, that Cadence was ineligible for the award because Cadence was purportedly not a qualified HUBZone small business concern as required by the Army's solicitation. Diversified previously filed a protest with the Army's contracting officer, challenging Cadence's eligibility under the HUBZone rules, but that protest was denied in a debriefing letter issued October 2, 2006. Promptly thereafter, on October 13, 2006, Diversified filed its complaint in this court.[2]

The government has in effect confessed error by filing a motion ("Def.'s Mot.") requesting the court to remand this matter to the Small Business Administration ("SBA") for a determination of Cadence's HUBZone qualifications. Diversified opposes remand, arguing that a remand would be inappropriate and would merely delay the resolution of the case. The resulting question before the court concerns the remedy to be applied, and specifically whether a remand to the SBA is appropriate.

### Background

On February 2, 2006, the Army issued Solicitation No. W91151-05-R-0003, requesting offers for work to repair, renovate, construct, and maintain facilities and structures on the Fort Hood Military Reservation, Fort Hood, Texas. Administrative Record ("AR") AR 581 (Solicitation § 00700); 614 (Amendment of Solicitation (Feb. 10, 2006)). The solicitation

---

[1]Because this opinion and order might have contained "confidential or proprietary information" within the meaning of Rules of the Court of Federal Claims ("RCFC") Appendix C, ¶ 4, and the protective order issued in this case on October 26, 2006, the opinion was initially filed under seal. The parties were requested to review the decision and provide proposed redactions of any such confidential or proprietary information on or before December 4, 2006. No redactions were requested.

[2]A motion by Cadence to intervene as of right pursuant to RCFC 24 was granted on October 26, 2006, and on October 30, 2006, the government filed the administrative record.

required that the awardee be a "[qualified] HUBZone small business concern[]." AR 534 (Solicitation § 00700 (citing 48 C.F.R. § 52.219-3)).[3]

The solicitation closed on March 31, 2006. AR 639 (Amendment of Solicitation (Mar. 1, 2006)). The Army received offers from seven prospective contractors, of whom all but Cadence and Diversified were disqualified for a variety of reasons. AR 483 (Abstract of Offers). Both Cadence and Diversified represented themselves to be qualified HUBZone small business concerns. *See* AR 669 (Cadence Proposal), 857 (Diversified Proposal). The Army's contracting officer notified Cadence on September 20, 2006, that it had been awarded the contract, *see* AR 1019 (Letter from Neta Singley, Contracting Officer, to Cadence (Sept. 20, 2006)), and Diversified on September 25, 2006, that it had not been selected. *See* AR 1020 (Letter from Singley to Diversified (Sept. 25, 2006)). On the same day Diversified was given notice of the award to Cadence, Diversified submitted a bid protest to the Army's contracting officer, asserting as its primary ground of protest that –

> Cadence Contract Services, LLC is not a HUBZone small business. As can be seen from attachment D hereto, Cadence Contract Services, LLC is a Utah Limited Liability firm that lists its address as "1204 W SOUTH JORDAN PKWY #D South Jordan, UT 84095." Attachment B hereto shows that there is no HUBZone firm in Utah by that name. The SBA's regulations defining a HUBZone small business require that the firm's principal office AND at least 35% of its employees must reside in a[] HUBZone. Attachment K shows that Cadence's principal office is NOT qualified as a HUBZone. Attachment C, on the other hand, shows that Diversified Maintenance Systems, Inc., protester here, is qualified as a HUBZone firm.
>
> Cadence Contract Services, LLC is therefore ineligible for award and non-responsive.

---

[3]Congress enacted the HUBZone Act of 1997, Pub. L. No. 105-135, 111 Stat. 2592, 2627-36 (codified, as amended, at 15 U.S.C. §§ 637, 657a, and other scattered sections of Chapter 14A of Title 15), amending the Small Business Act, Pub. L. No. 85-536, 72 Stat. 384 (1958), to create a new category of entities for which the President was directed to "annually establish [a] Government-wide goal[] for procurement contracts awarded." 15 U.S.C. § 644(g)(1). As stated in implementing regulations issued by the SBA, "[t]he purpose of the HUBZone program is to provide federal contracting assistance for qualified [small business concerns] located in historically underutilized business zones in an effort to increase employment opportunities, investment, and economic development in such areas." 13 C.F.R. § 126.100. Criteria for eligibility include having a principal office in certain locations, 15 U.S.C. § 632(p)(5)(A)(i)(I)(aa), *i.e.*, in a "historically underutilized business zone" as defined in 15 U.S.C. §§ 632(p)(1), (4), having certain ownership structures, 15 U.S.C. § 632(p)(3), being of an appropriate size as measured by standards specified by the SBA, 15 U.S.C. § 632(a)(2), and employing an eligible workforce. 15 U.S.C. § 632(p)(5)(A)(i)(I)(aa).

AR 1114-15 (Letter from Timothy Miguel Willardson to Singley (Sept. 25, 2006)).[4] On October 4, the Army contracting officer denied Diversified's protest, reciting that –

> Cadence Contract Services, LLC, represented itself as a H[UBZ]one Certified small business concern, registered at 30139 State Rt. 3, Black River, New York 13612. Following the close of the solicitation, this office verified the qualifications and eligibility criteria of Cadence at that address. The Small Business Administration's H[UBZ]one website confirms that eligibility.

AR 1123 (Letter from Singley to Willardson (Oct. 4, 2006)).

The government represents that Cadence has begun performance on the contract. Def.'s Mot. at 3.

**Jurisdiction**

"Jurisdiction must be established as a threshold matter before the court may proceed with the merits of this or any other action." *OTI America, Inc. v. United States*, 68 Fed. Cl. 108, 113 (2005) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88-89 (1998)). This court has jurisdiction over bid protests, including post-award challenges to federal procurement decisions, under Subsection (b) of the Tucker Act, 28 U.S.C. § 1491(b)(1), added by the Administrative Dispute Resolution Act, Pub. L. No. 104-320, 110 Stat. 3870, 3874 (1996). Diversified's action challenging the award of a contract by the Army to Cadence falls squarely within this statutory grant of jurisdiction to this court. *See PGBA, LLC v. United States*, 389 F.3d 1219, 1224 (Fed. Cir. 2004).

**Standards for Decision**

This court's review of a federal agency's decision regarding a contractual solicitation or award is governed by provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. *See* 28 U.S.C. § 1491(b)(4).[5] The pertinent standards require the court to set aside an agency

---

[4]Diversified's protest also alleged that the Army had improperly considered prior experience Cadence had obtained as a joint venturer with a larger firm. AR 1114-15 (Letter from Willardson to Singley (Sept. 25, 2006)). Diversified includes this allegation in its complaint. *See* Compl. ¶¶ 6-8. In a separate memorandum dated September 22, 2006, Diversified requested a debriefing. *See* AR 1110 (Memorandum from Jeff Severin, General Manager (Sept. 22, 2006)). The resulting debriefing identified alleged weaknesses and deficiencies in Diversified's proposal. AR 1107-09 (Letter from Singley to Diversified (Oct. 2, 2006)). Diversified also challenges in its complaint four of the deficiencies identified in the debriefing. *See* Compl. ¶¶ 9-13.

[5]Paragraph 1491(b)(4) of Title 28 provides: "In any action under [28 U.S.C. § 1491(b)], the courts shall review the agency's decision pursuant to the standards set forth in section 706 of

contracting decision that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This court's review is limited to determining whether the agency's "decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *abrogated in part by Califano v. Sanders*, 430 U.S. 99, 105, 107 (1977) (abrogating *Overton Park* to the extent it recognized the APA as an independent grant of subject matter jurisdiction). In undertaking review under these standards, the court may not "substitute its judgment for that of the agency," *Keeton Corr., Inc. v. United States*, 59 Fed. Cl. 753, 755 (2004) (quoting *Overton Park*, 401 U.S. at 416), and may overturn an agency's decision only if "the procurement official's decision lacked a rational basis; or . . . the procurement procedure involved a violation of regulation or procedure." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001) (citing *Kentron Haw., Ltd. v. Warner*, 480 F.2d 1166, 1169 (D.C. Cir. 1973)).

Beyond a showing that the agency acted without a rational basis or contrary to law, the disappointed bidder, to prevail in a bid protest, must show that the government's actions actually prejudiced the bidder in the procurement process. *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005) (in deciding whether to award relief to a protestor, the court must "determine, as a factual matter, if the bid protester was prejudiced by [the government's] conduct"); *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1057 (Fed. Cir. 2000) (protestor "must show not only that significant errors occurred in the procurement process, but also that the errors were prejudicial"). In short, the protesting plaintiff must show "that there was a 'substantial chance it would have received the contract award but for that error.'" *Galen Med. Assocs., Inc. v. United States*, 369 F.3d 1324, 1331 (Fed. Cir. 2004) (quoting *Statistica, Inc. v. Christopher*, 102 F.3d 1577, 1582 (Fed. Cir. 1996)); *see also Systems Plus, Inc. v. United States*, 69 Fed. Cl. 757, 769, 774 (2006).

## Analysis

### A. *The Conceded Error*

SBA is charged with administering the HUBZone program. Specifically, Congress has delegated to the Administrator of the SBA the authority to

> establish procedures relating to . . . the filing, investigation, and disposition by the [SBA] of any challenge to the eligibility of a small business concern to receive assistance under this section (including a challenge, filed by an interested party, relating to the veracity of a certification made or information provided to the [SBA] by a small business concern under section 632(p)(5) of this title).

---

title 5."

15 U.S.C. § 657a(c)(1)(A).[6] SBA's regulations permit an interested party, such as Diversified, to "protest the apparent[ly] successful offeror's qualified HUBZone S[mall] B[usiness] C[oncern] status," 13 C.F.R. § 126.800(b), by submitting to the contracting officer, 13 C.F.R. § 126.801(c)(1), "all specific grounds for the protest" in writing. 13 C.F.R. § 126.801(b). "The [contracting officer] must forward to SBA any non-premature protest received, notwithstanding whether he or she believes it is sufficiently specific or timely. The [contracting officer] must send the protests along with a referral letter to [the SBA's Associate Administrator for the HUBZone Program]." 13 C.F.R. § 126.801(e).[7] "The [SBA's Associate Administrator for the HUBZone Program] or designee will determine whether the concern has qualified HUBZone status." 13 C.F.R. § 126.802.

The government concedes that the Army's contracting officer failed to forward Diversified's protest to the SBA as required. Def.'s Mot. at 9.

B. *Remedy*

In light of the government's conceded error, the remedy appropriate to these circumstances is thus at issue. The contracting officer could not have properly awarded the contract to Cadence while Diversified's protest was pending, absent a determination by her in

---

[6]Section 632(p)(5) of Title 15 allows small business concerns to certify their eligibility as qualified HUBZone small business concerns and empowers the SBA Administrator to make determinations as to whether "[a] HUBZone small business concern is 'qualified'" based on SBA's certification procedures and information submitted by the small business concern.

[7]The SBA's regulations specify that the transmittal must include information about the solicitation to provide context for the challenge:

> The C[ontracting] O[fficer]'s referral letter must include information pertaining to the solicitation that may be necessary for SBA to determine timeliness and standing, including: the solicitation number; the name, address, telephone number and facsimile number of the C[ontracting] O[fficer]; the type of HUBZone contract at issue; if the procurement was conducted using full and open competition with a HUBZone price evaluation preference, and whether the protester's opportunity for award was affected by the preference; if the procurement was a HUBZone set-aside, whether the protester submitted an offer; whether the protested concern was the apparent successful offeror; whether the procurement was conducted using sealed bid or negotiated procedures; the bid opening date, if applicable; when the protest was submitted to the C[ontracting] O[fficer]; and whether a contract has been awarded.

13 C.F.R. § 126.801(e).

writing that the "award must be made to protect the public interest." 13 C.F.R. § 126.803(b)(3).[8] Diversified, as the only bidder besides Cadence not disqualified from the award, Pl.'s Opposition to Def.'s Mot. to Remand ("Pl.'s Resp.") at 10; AR 483 (Abstract of Offers), would have been next in line to have been awarded the contract had the SBA determined that Cadence did not have qualified HUBZone status.

The government urges the court to remand this matter to SBA for SBA to determine Cadence's HUBZone status. Def.'s Reply at 1, 4 (citing *Mark Dunning Indus. v. United States*, 58 Fed. Cl. 216, 225 (2003)). This court's remedial power includes the ability in an appropriate case to remand a disputed matter to the pertinent administrative agency. *See* 28 U.S.C. § 1491(a)(2) ("[T]he court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just."). Diversified opposes remand to the SBA, asserting that this court "can . . . just as well and just as expeditiously" receive and consider evidence to make a determination as to whether qualified HUBZone status is proper for Cadence. Pl.'s Resp. at 11-12.

Diversified's argument is unavailing. No matter how well or expeditiously a court might be able to make a determination, the controlling consideration is whether, by doing so, the court would intrude upon a province that does not belong to it. *Securities & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 94 (1943) ("*Chenery I*"); *Phelps Dodge Corp. v. National Labor Relations Bd.*, 313 U.S. 177, 197 (1941).

"It is not for [this court] to determine independently" a question "which Congress has entrusted to [an] agency." *Chenery I*, 318 U.S. at 94 (Holding that when Congress entrusted to the SEC the power to determine whether a corporate ownership structure was "detrimental to the public interest or the interest of investors or consumers" or "fair and equitable" and the SEC made a determination on invalid grounds, the SEC's action could not "be upheld merely because findings might have been made and consideration disclosed which would justify its order."). As a consequence, "[i]f an order is valid only as a determination of policy or judgment which the agency alone is authorized to make and *which it has not made*, a judicial judgment cannot be made to do service for an administrative judgment." *Id*. at 88 (emphasis added).

Congress has unambiguously delegated to the SBA Administrator the task of determining a contractor's qualified HUBZone status. *See* 15 U.S.C. § 632(p)(5)(A)(i) ("the Administrator otherwise determines"); 15 U.S.C. § 632(p)(5)(A)(ii)(II) ("otherwise determined by the Administrator"); 15 U.S.C. § 657a(c)(1)(A) ("the filing, investigation, and disposition by the Administration"); 15 U.S.C. § 657a(c)(1)(B) ("verification by the Administrator"); 15 U.S.C.

---

[8]When SBA receives a protest of this type, *i.e.*, of a bidder's or awardee's qualified status, it must act expeditiously to resolve the disputed matter. The regulations provide that "SBA will determine the HUBZone status of the protested HUBZone S[mall] B[usiness] C[oncern] within 15 business days after receipt of a protest." 13 C.F.R. § 126.803(b)(1).

§ 657a(c)(2) ("examinations . . . by the Administrator"); 15 U.S.C. § 657a(c)(4) (penalties "determined by the Administrator"). The concededly improper action by the Army's contracting officer by herself undertaking an internet search for information about Cadence rather than referring the matter to SBA for investigation and resolution cannot be remedied by a subsequent intrusion by this court. In this vein, the Supreme Court has opined that

> [i]f the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. The reviewing court is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry.

*Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). Though Diversified correctly describes these observations as *dicta*, Pl.'s Resp. at 8, the views expressed in *Florida Power & Light* reflect long-standing administrative practice and precedents. *See Chenery I*, 318 U.S. at 94; *see also Immigration & Naturalization Serv. v. Orlando Ventura*, 537 U.S. 12, 16, 17 (2002) (holding that where "the law entrusts the agency to make the basic asylum eligibility decision . . . in question, [the lower court] committed clear error . . . [by] seriously disregard[ing] the agency's legally mandated role" and not remanding the case to the agency for decision); *Nippon Steel Corp. v. International Trade Comm'n*, 345 F.3d 1379, 1380, 1381 (Fed. Cir. 2003) (agreeing with appellants that the lower court "exceeded its authority and engaged in credibility determinations and other fact-finding functions assigned solely to the Commission by statute" and that instead the lower court "should have remanded . . . for further proceedings").

The circumstances found not to require remand have been rare indeed. *See generally* Gary Lawson, *Federal Administrative Law* 360 (3d ed. 2004). For example, "when 'there is not the slightest uncertainty as to the outcome of a proceeding' on remand, courts can affirm an agency decision on grounds other than those provided in the agency decision." *Envirocare of Utah, Inc. v. Nuclear Regulatory Comm'n*, 194 F.3d 72, 79 (D.C. Cir. 1999) (holding that in the absence of a possibility that the agency might reach a different result on remand, remand is unnecessary) (quoting *National Labor Relations Bd. v. Wyman-Gordan*, 394 U.S. 759, 766 n.6 (1969)); *accord Yang v. Immigration & Naturalization Serv.*, 109 F.3d 1185, 1194 (7th Cir. 1997) ("[I]t is pointless to remand if 'it is clear what the agency decision must be.'") (quoting *Rosendo-Ramirez v. Immigration & Naturalization Serv.*, 32 F.3d 1085, 1094 (7th Cir. 1994), and citing *Osmani v. Immigration & Naturalization Serv.*, 14 F.3d 13, 15 (7th Cir. 1994)); *National Labor Relations Bd. v. American Geri-Care, Inc.*, 697 F.2d 56, 64 (2d Cir. 1982) (declining to remand "because there [wa]s not the slightest doubt that the Board would simply reaffirm its order" on another identifiable ground).[9]

---

[9]The exceptions to the general rule include situations where "the sole issue is one of statutory construction" and "the plain language of the statute compels [a particular] conclusion

Also distinguishable are cases in which an agency has reached a decision in a matter under review but where the resulting administrative record lacks some information a court needs for review. In such a case, the Supreme Court has said that "[t]he court may require the administrative officials who participated in the decision to give testimony explaining their action" instead of remanding the matter. *Overton Park*, 401 U.S. at 416. The Federal Circuit, recognizing the statutory mandate for this court to "give 'due regard' to 'the need for expeditious resolution' [of bid protests]," *Bannum*, 404 F.3d at 1356 (quoting 28 U.S.C. § 1491(b)(3)), has found that remand would be unnecessary in a situation where a deposition of the contracting officer could suffice to provide the information the court needed for review, specifically "(1) whether the contracting officer . . . possessed or obtained information sufficient to [make a] deci[sion] . . . and (2) on what basis he made the . . . determination." *Impresa Construzioni*, 238 F.3d. at 1339 (applying *Overton Park*, 401 U.S. at 420); *accord OTI America, Inc. v. United States*, ___ Fed. Cl. __, __ n.18, __ n.42, 2006 WL 3231343, at *6 n.18 and *18 n.42 (Nov. 8, 2006).

In short, the situation at hand is not one of those rare circumstances where a remand would be inappropriate. Diversified's challenge to Cadence's HUBZone qualifications turn on application of SBA's regulations regarding the firm's principal office and the locus of at least 35% of its employees. The contracting officer's error forestalled SBA from addressing these issues.

C. *Appropriate Terms For Remand*

When a remand is appropriate, this court may provide the agency "with such direction as [this court] may deem proper and just." 28 U.S.C. § 1491(a)(2); *see also* RCFC 52.2(a)(1). "An order of remand shall . . . delineate the area of further consideration or action deemed warranted on the remand." RCFC 52.2(a)(2)(A).

This case accordingly is remanded to the Administrator of SBA or the Administrator's designee to determine Diversified's protest as to Cadence's qualified HUBZone status. In addition, the Administrator or designee should determine the appropriate date for measuring Cadence's qualifications, *i.e.*, March 31, 2006, the date the solicitation closed, the date of bid opening, or the date of contract award, or some other date. The SBA shall proceed expeditiously, completing its proceedings within 100 days of the entry of this Opinion and Order. *See* RCFC

. . . not requir[ing] or implicat[ing] the exercise of agency discretion in applying subtle and complex statutory standards to particular facts." *Koyo Seiko Co. v. United States*, 95 F.3d 1094, 1101 (Fed. Cir. 1996). In that context, the Federal Circuit has ruled that a court need not remand to the agency if the court "would have had no choice but to reverse [a] ruling" by the agency had it reached a different conclusion. *Id.*

52.2(a)(2)(B). During the remand period, proceedings in this court shall be stayed. *See* RCFC 52.2(a)(2)(C).[10]

"The results of the proceedings on remand are subject to this court's review." *Santiago v. United States*, 71 Fed. Cl. 220, 230 n.17 (2006). As the court in *Mark Dunning* noted, "SBA's decision must set forth its rationale with clarity, and must be justifiable on that basis." 58 Fed. Cl. at 225 (citing *Securities & Exch. Comm'n v. Chenery Corp.* 332 U.S. 194, 196-97 (1947) ("*Chenery II*")).[11]

**Conclusion**

For the reasons set forth, the government's motion for remand is GRANTED. Diversified's bid protest is remanded to the Administrator of the SBA for a decision on Diversified's challenge to Cadence's HUBZone qualifications. The matter is also being remanded to the Secretary of the Army for the limited purpose of preparing the contracting officer's referral letter to the SBA with the information described in 13 C.F.R. § 126.801(e), quoted *supra*, at 6 n.7. This preliminary step shall be accomplished within 20 days of the entry of this decision. Four copies of the referral shall be filed with the Clerk of this court. *See* RCFC 52.2(b)(3). The SBA shall complete its proceedings within 100 days of the entry of this decision, and the decision on remand shall be filed with the Clerk as provided in RCFC 52.2(b)(3). In the interim, further proceedings before this court are stayed.

---

[10]The court recognizes that Cadence presumably will continue with its performance under the contract during the period of the remand. The period of the remand takes account of SBA's time limitations for acting on a "status protest," *see supra*, at 7 n.8 (quoting 13 C.F.R. § 126.803(b)(1)), and the possibility that an administrative appeal may be taken from SBA's initial decision. *See* 13 C.F.R. § 126.805 (providing that an appeal may be taken by the HUBZone small business concern, the protestor, or the contracting officer, and prescribing time limitations on the various appellate steps).

[11]Diversified argues that the SBA's procedures for processing a HUBZone status protest contravene Subsection 555(b) of the APA , 5 U.S.C. § 555(b), because Diversified will have an inadequate opportunity for participation in the proceedings before the SBA. Pl.'s Resp. at 10-11 (citing *Advanced Sys. Tech., Inc. v. United States*, 69 Fed. Cl. 474, 484 (2006)). SBA's proceedings contemplate informal adjudication of challenges to HUBZone status, and "Section 555 [of the APA] establishes the minimal procedural requirements for informal adjudication." *Advanced Sys. Tech.*, 69 Fed. Cl. at 484 (citing *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 655 (1990)). However, at this juncture, this court has no basis to find that SBA's procedures would be inadequate as applied to this matter. After the SBA has made its determinations, this court will be able to review those determinations to ensure that they are not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706.

On or before December 4, 2006, the parties are requested to submit proposed redactions of any confidential or proprietary information that may be set out in this decision as rendered under seal.

It is so ORDERED.

s/ Charles F. Lettow
Judge