ORIGINAL

U.S. SMALL BUSINESS ADMINISTRATION
WASHINGTON, DC 20416

FILED
MAR 15 2007
U.S. COURT OF FEDERAL CLAIMS

Diversified Maintenance Systems, Inc. v. United States
No. 06-706 C
Decision on Remand from U.S. Small Business Administration

**VIA FACSIMILE: (801) 487-4069**

JAN 10 2007

Timothy Miguel Willardson, Esq.
3165 S. 300 W.
Salt Lake City, UT 84115

**RE: HUBZone Protest for Solicitation No. W91151-05-R-0003 and Contract No. W91151-06-D-0013**

Dear Mr. Willardson:

This is to notify you that I am denying the protest of Diversified Maintenance Systems, Inc. ("Diversified"), challenging the status of Cadence Contract Services, LLC ("Cadence") as a HUBZone small business concern ("SBC") under the referenced solicitation and contract. As set forth below, based on the information provided in Diversified's protest and Cadence's response to that protest, I have determined that Cadence maintains its principal office in a qualified HUBZone and is therefore eligible for award of the HUBZone contract at issue. This determination is effective immediately and is final unless overturned on appeal.

**Relevant Statutory and Regulatory Provisions**

In general, to qualify as a HUBZone SBC, the concern must, among other things, maintain its principal office in a qualified HUBZone. 15 U.S.C. § 632(p)(5)(A)(i)(I)(aa); 13 C.F.R. § 126.200(b). The governing statute and regulations define a "HUBZone" to mean an area located within one or more qualified census tracts, qualified non-metropolitan counties, lands within the external boundaries of an Indian reservation, redesignated areas or base closure areas. 15 U.S.C. § 632(p)(1); 13 C.F.R. § 126.103. SBA's regulations further define the term "principal office" as the location where the greatest number of a concern's employees at any one location perform their work. 13 C.F.R. § 126.103. However, for concerns whose primary industry is service or construction, employees who perform the majority of their work at job-site locations to fulfill specific contractual obligations are excluded from the principal office determination. 13 C.F.R. § 126.103. Additionally, a HUBZone SBC may have offices in more than one location, as long as the concern's principal office is located in a HUBZone. 13 C.F.R. § 126.207.

In defining an employee for HUBZone purposes, the HUBZone regulations provide that an "employee" means:

> a person (or persons) employed by a HUBZone SBC on a full-time (or full-time equivalent), permanent basis. Full-time equivalent includes employees who work 30 hours per week or more. Full-time equivalent also includes the aggregate of employees who work less than 30 hours a week, where the work hours of such employees add up to at least a 40 hour work week. The totality of the circumstances,

including factors relevant for tax purposes, will determine whether persons are employees of a concern. Temporary employees, independent contractors or leased employees are not employees for these purposes. 13 C.F.R. § 126.103.

**Protest Allegations and Response**

In its protest, Diversified asserts that Cadence does not qualify as a HUBZone SBC because it does not maintain its principal office in a HUBZone. To support that assertion, Diversified argues that although Cadence is a Utah Limited Liability firm, there is no HUBZone firm in Utah under that name. It further argues that Cadence's Utah office, which is located at 1204 W South Jordan Parkway #D, South Jordan, Utah, 84095, is not located in a HUBZone. Based on those allegations, I requested that Cadence provide supporting documentation, including payroll records, evidencing that its principal office was located in a HUBZone at the time it submitted its offer on March 31, 2006, and at the present time.

In response, on December 20, 2006, Cadence submitted a written statement and extensive supporting documentation to show that its principal office is located in a qualified HUBZone. In its statement, Cadence explained that since January 2004, it has maintained a principal office at 30139 State Route 3 (P.O. Box 79), Black River, New York 13612. It has owned that property since September 2005. It further indicated that it is a part of the Black River community, as reflected by its investment in real property, the duration of time it has been located in the area, the number of residents it employs from the area, and its participation in the local community. With respect to its employment of local residents, Cadence pointed out in its response that at the time it submitted its offer for the instant procurement on March 31, 2006, 47 percent of its employees resided in HUBZones. Presently, a total of 55 percent of its employees are HUBZone residents. With regard to its participation in the local community, Cadence explained that it has sponsored a little league baseball team for the past two years and it has received a Plaque of Appreciation from the County Sheriff in recognition of its "community activities."

In connection with Diversified's claim that Cadence's principal office is located at 1204 W South Jordan Parkway #D, South Jordan, UT 84095, Cadence points out that under the HUBZone regulations, the determination of principal office is based on the location where the greatest number of a concern's employees perform their work. According to Cadence, the majority of its employees perform their work at Cadence's office located in the Black River, New York area, which is located in a qualified HUBZone. Cadence also noted that at all times relevant to this protest it designated its Black River office as its principal office in the Central Contractor Registration.

In accordance with my request for supporting documentation, Cadence provided numerous records to substantiate its claim that its principal office is located at 30139 State Route 3, Black River, New York 13612. On December 29, Cadence supplemented those records with additional documents, in response to a request from this Office for additional information concerning its employees and office locations. Together, Cadence provided:

- Payroll records reflecting the name, address, hours worked and office location of all its employees at the time it submitted its offer for the instant procurement and at the present time;

- A copy of each employee's Withholding Allowance Certificate (Form W-4), showing their home addresses;
- Copies of the HUBZone Locator Maps verifying the HUBZone residency of each employee who resides in a HUBZone;
- A copy of the Title and Property Description showing that Cadence is the "First Grantee" of the property located on Route 3 in the County of Jefferson, New York;
- Copies of utility bills, including electricity, gas, water, phone and internet bills for its Black River office location; and
- A list of all its office locations.

**Analysis of Information Submitted**

A thorough review of all the information submitted in both Diversified's protest and Cadence's response indicates that at all times relevant to this protest, the greatest number of Cadence's employees worked at its office located at 30139 State Route 3, Black River, New York 13612. In particular, the information Cadence submitted indicates that as of March 31, 2006, the date Cadence submitted its offer for the subject procurement, it operated out of a total of eight separate office locations. In addition to its offices at 30139 State Route 3, Black River, New York 13612 and 1204 W South Jordan Parkway #D, South Jordan, Utah 84095, Cadence had one office in Aberdeen, Maryland; one office in Bynum, Alabama; one office in Fort Hood, Texas; one office in Fort Polk, Louisiana; one office in Hill Air Force Base ("AFB"), Utah; and one office in Sheppard AFB, Texas. Cadence's payroll records show that for the pay period including March 31, 2006, it had a total of 36 full-time employees.[1] During that pay period, its 36 employees each worked at one of its various office locations as follows:

- 1 employee worked at the Aberdeen, Maryland office;
- 18 employees worked at its Black River, New York office;
- 4 employees worked at its Bynum, Alabama office;
- 3 employees worked at its Fort Hood, Texas office;
- 1 employee worked at its Fort Polk, Louisiana office;
- 1 employee worked at its Hill AFB, Utah office;
- 4 employees worked at its Sheppard AFB, Texas office; and
- 4 employees worked at its South Jordan, Utah office.

Accordingly, by far the greatest number of Cadence's full-time employees performed their work at its 30139 State Route 3, Black River office, as of March 31, 2006. That location therefore qualifies as its principal office for HUBZone purposes at the time of offer.

---

[1] Cadence has indicated that it does not have any temporary or leased employees, nor does it have any independent contractors. In addition, although Cadence's primary industry is classified under the North American Industry Classification System code 233210, which falls under the "Construction Sector," it does not have any employees who perform the majority of their work at job-site locations to fulfill specific contract obligations. As a result, it is not entitled to any exclusion of job-site employees for the determination of principal office under 13 C.F.R. § 126.103.

Similarly, at the present time the greatest number of Cadence's full-time employees also work at its 30139 State Route 3, Black River office. Currently, Cadence has six office locations, having closed its offices in Aberdeen, Maryland and Fort Polk, Louisiana in April 2006. As reflected in its payroll records, Cadence now has a total of 58 full-time employees. These employees perform their work at one of Cadences existing six office locations as follows:

- 30 employees work at its Black River, New York office;
- 8 employees work at its Bynum, Alabama office;
- 12 employees work at its Fort Hood, Texas office;
- 1 employee works at its Hill AFB, Utah office;
- 3 employees work at its Sheppard AFB, Texas office; and
- 4 employees work at its South Jordan, Utah office.

Thus, at the present time the greatest number of Cadence's employees perform their work at its Black River, New York office location.

Diversified's allegation that Cadence's Utah office is its principal office by virtue of the fact that it is a Utah Limited Liability firm with a registered office in that State is not sufficient to refute the extensive documentation in the record concerning Cadence's principal office. As a legal matter, the HUBZone regulations explicitly recognize that a HUBZone SBC may have one or more non-HUBZone office, provided that the firm's principal office is located in a HUBZone. 13 C.F.R. § 126.207. As Cadence correctly pointed out in its written statement in response to Diversified's protest, the determination of principal office for HUBZone purposes is not based on the location of a firm's registered office for state organization purposes. Instead, the determination of principal office under 13 C.F.R. § 126.103 is based on the location where the greatest number of the concern's employees perform their work.

As a factual matter, the evidence in the record shows that the greatest number of Cadence's employees perform their work at the Black River office location and not at Cadence's South Jordan, Utah office. Further, the additional evidence Cadence provided, including the title documents and extensive utility bills for the Black River property, the W-4 forms reflecting the home addresses of its employees in that area, and the evidence of its community activities in the local area, together confirm that the 30139 State Route 3, Black River location is a bona fide office where Cadence and the majority of its employees conduct the company's business affairs. Accordingly, based on the information and supporting documentation provided, the Black River, New York office constitutes Cadence's principal office within the meaning of governing HUBZone regulations. Since that office is located in a HUBZone, I conclude that Cadence satisfies the HUBZone principal office requirement at both the time of offer and at the present time. Cadence is therefore eligible for award of the instant HUBZone contract.

**Appeal Rights**

The parties to this protest may appeal this decision under 13 C.F.R. § 126.805. All appeals must be made to Anthony Martoccia, Associate Deputy Administrator for Government Contracting and Business Development (ADA/GC&BD) within five business days from receipt of this letter. The appeal may be sent by facsimile, express delivery service, or U.S. mail (postmarked within the applicable time period), or via hand delivery. The ADA/GC&BD may be reached at the U.S. Small Business Administration, 409 3rd Street, SW, Suite 8000,

Washington, DC 20416, or by facsimile at (202) 205-5206. SBA will dismiss any appeal received after the five-day period. Pursuant to 13 C.F.R. § 126.805(d), the party bringing the appeal must provide a notice of the appeal to the contacting activity CO and the original protester. I have attached a copy of the appeal procedures.

Sincerely,

Michael McHale
Associate Administrator
HUBZone Program

cc (via facsimile):

Neta A. Singley
Contracting Officer
Department of the Army

Patrick Hendrickson, Esquire
Counsel for Cadence Contract Services, LLC

Sec. 126.805 What are the procedures for appeals of HUBZone status determinations?

(a) Who may appeal. The protested HUBZone SBC, the protestor, or the contracting officer may file appeals of protest determinations with SBA's ADA/GC&8(a)BD.

(b) Timeliness of appeal. SBA's ADA/GC&8(a)BD must receive the appeal no later than 5 business days after the date of receipt of the protest determination. SBA will dismiss any appeal received after the five-day period.

(c) Method of Submission. The party appealing the decision may deliver its appeal in person, by facsimile, by express delivery service, or by U.S. mail (postmarked within the applicable time period).

(d) Notice of appeal. The party bringing an appeal must provide notice of the appeal to the contracting activity contracting officer and either the protested HUBZone SBC or original protestor, as appropriate.

(e) Grounds for appeal. (1) SBA will re-examine a protest determination only if there was a clear and significant error in the processing of the protest or if the AA/HUB failed completely to consider a significant fact contained within the information supplied by the protestor or the protested HUBZone SBC.

(2) SBA will not consider additional information or changed circumstances that were not disclosed at the time of the AA/HUB's decision or that are based on disagreement with the findings and conclusions contained in the determination.

(f) Contents of appeal. The appeal must be in writing. The appeal must identify the protest determination being appealed and set forth a full and specific statement as to why the decision is erroneous or what significant fact the AA/HUB failed to consider.

(g) Completion of appeal after award. An appeal may proceed to completion even after award of the contract that prompted the protest, if so desired by the protested HUBZone SBC, or where SBA determines that a decision on appeal is meaningful.

(h) Decision. The ADA/GC&8(a)BD will make its decision within 5 business days of its receipt, if practicable, and will base its decision only on the information and documentation in the protest record as supplemented by the appeal. SBA will provide a copy of the decision to the contracting officer, the protestor, and the protested HUBZone SBC, consistent with law. The ADA/GC&8(a)BD's decision is the final agency decision.